IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Senior Judge Wiley Y. Daniel**

Civil Action No.   13-cv-02232-WYD

JENNIFER A. MCGOWAN,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER**

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's application for disability benefits under Title II of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-433.  For the reasons stated below, this case is reversed and remanded to the Commissioner for further fact finding.

I.    BACKGROUND

In October 2007, Plaintiff protectively filed her application for disability benefits. (ECF No. 13, Administrative Record ["AR"] 137-44.)  She claimed that she became disabled on November 4, 2001, due to a back impairment.  (*Id.* 183.)  Plaintiff, born in 1970, was 31 years old on her alleged onset of disability date and 38 years old when her insured status expired on September 30, 2008.  (*Id.* 137, 163.)

After the State agency denied Plaintiff's claim (AR 84-88), she requested a hearing before an ALJ.  (*Id.* 89-90.)  Following a hearing (*id.* 45-83), an ALJ concluded

in a decision dated September 28, 2009, that Plaintiff was not disabled within the meaning of the Act. (*Id.* 19-27.)

The Appeals Council declined review of the ALJ's decision. (AR 1-4.) Plaintiff sought judicial review of the ALJ's decision in this Court, the case was assigned to me, and I remanded the case for further proceedings by Order dated September 24, 2012 ["remand order"]. (*Id.* 677-95.)

Pursuant to the remand order, the ALJ's decision was vacated by the Appeals Council. The Council remanded the case to the ALJ for further proceedings. (*Id.* 698.) After a new hearing (*id.* 613-56), the ALJ again determined in a decision dated May 12, 2013, that Plaintiff was not disabled within the meaning of the Act. (*Id.* 602-12.)

More specifically, in the sequential evaluation process required by law, the ALJ found at step one that Plaintiff last met the insured status requirements of the Act on September 30, 2008. (AR 605.) The ALJ also found that Plaintiff did not engage in substantial gainful activity from her alleged onset date of November 4, 2001, through her date last insured. (*Id.*)

At step two, the ALJ found that, through the date last insured, Plaintiff had the following "severe" impairments: degenerative disc disease and sacroiliac joint dysfunction. (AR 605.) At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (*Id.*)

The ALJ then addressed Plaintiff's residual functional capacity ["RFC"]. (AR 606-10.) She found that Plaintiff has the RFC to perform light work with the following limitations: lift and/or carry ten pounds frequently and 20 pounds occasionally, requires

a sit/stand option while remaining at the workstation, meaning that she can sit/stand at will while performing her assigned duties; can stand and/or walk, with normal breaks, for a total of six hours in an eight-hour workday; can sit, with normal breaks, for a total of six hours in an eight-hour workday; can perform pushing and pulling motions with her upper and lower extremities within the given weight restrictions; and can occasionally perform postural activities of stooping, crouching, and bending, that does not require exposure to unprotected heights." (*Id.* 606.)

The ALJ found at step four that Plaintiff was unable to perform any past relevant work. (AR 610.) At step five, the ALJ found that, through the date last insured, there were jobs existing in significant numbers in the national economy that Plaintiff could perform. (*Id.* 611.) Thus, the ALJ concluded that Plaintiff was not disabled under the Act at any time from November 4, 2001, through September 30, 2008, the date last insured (and the date last eligible to receive benefits). (*Id.* 611.) This appeal followed.

Plaintiff argues that the ALJ violated this Court's remand order and improperly evaluated the medical source opinions. She also argues that the ALJ failed to properly determine Plaintiff's RFC, that her analysis of medical evidence and pain was faulty, and that the ALJ failed to meet the Commissioner's burden at step five.

II.     ANALYSIS

    A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and*

*Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990).  "It requires more than a scintilla of evidence but less than a preponderance of the evidence."  *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).  "[I]f the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence."  *Thompson v. Sullivan*,  987 F.2d 1482, 1487 (10th Cir. 1993).  However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'"  *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quotation omitted).

The ALJ's decision must be evaluated "based solely on the reasons given stated in the decision."  *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004).  A post-hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance.  *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).  Thus, I will not consider post-hoc arguments of the Commissioner.

    B.    <u>The Merits of Plaintiff's Arguments</u>

        1.    <u>The Medical Evidence and Opinions</u>

I first address Plaintiff's argument that the ALJ did not properly weigh the medical source opinions and violated the remand order as to same.  Plaintiff argues that the ALJ erred in rejecting the opinion of treating physician Dr. Schwender.  (AR 610.)  In an opinion dated October 14, 2003, Dr. Schwender diagnosed "Chronic discogenic low

back pain", despite noting that Plaintiff received symptomatic relief from her pain medications (Bextra, cyclobenzaprine, and Vicodin). (*Id.* 562.) He assessed Plaintiff with a 25% whole person impairment (9% for structural injury of the lumbar spine and 18% for decreased range of motion of the lumbar spine). (*Id.* 563.) As to functional work restrictions, Dr. Schwender found that Plaintiff "has a fivepound max lift limit, a three pound repetitive lift and carry limit", no pushing, pulling, or kneeling, and Plaintiff "should be allowed to alternate sitting, standing, and walking as needed for back comfort." (*Id.*) In so finding, he noted Plaintiff's "borderline submaximal effort" on the functional capacity evaluation ["FCE"] on September 30, 2003, and stated that the above restrictions "are certainly safe" but "probably do not represent the patient's safe maximal physical capacity." (*Id.*)

My remand order as to the ALJ's previous decision stated, among other things, that the ALJ failed to apply the treating physician rule as to Dr. Schwender and "did not indicate that she gave [his] opinions deference or that she weighed his opinions using all of the relevant factors." (AR 683.) In the ALJ's current decision, she explicitly referred to the two-step rule required in evaluating whether a treating physician's opinion is entitled to controlling weight as well as the factors to be considered in determining the weight to be given to the opinion. (AR 609.) She then stated she gave "very little weight" to Dr. Schwender's opinion, finding that it failed the two-step analysis required for controlling weight. (*Id.* 609-10.)

Again, I find error with this analysis. While the ALJ cited to the treating physician rule, she did not properly apply it. The initial determination the ALJ must make is whether the treating physician's medical opinion "is conclusive, i.e., is to be accorded

-5-

'controlling weight,' on the matter to which it relates." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* Even if the opinion is not entitled to controlling weight, it is still entitled to deference; "at the second step in the analysis, the ALJ must make clear how much weight the opinion is being given. . . and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* I find that the ALJ failed on both steps of the test.

As to the first step, the ALJ found that Dr. Schwender's opinion "is inconsistent with the objective imaging studies" and "is sharply inconsistent with the longitudinal treatment records" which he detailed in the opinion. (AR 610.) "Based upon these inconsistencies", the ALJ stated that she could not find that Dr. Schwender's "opinion is supported by the evidence or that it is consistent with the record as a whole and is, [sic] fact, of questionable validity by the notations of the occupational therapist performing the testing (Ex. 5F at p. 24)." (*Id.*) However, the ALJ selectively applied the evidence on this issue and ignored evidence that Dr. Schwender's evidence was supported by medically acceptable clinical or laboratory diagnostic techniques.

Thus, while the ALJ is correct that Dr. Schwender's opinion is inconsistent with a normal lumbar spine x-ray (*id.* 553, 570, 606, 608) (which she refers to as "objective imaging studies"), the ALJ ignored Dr. Schwender's reliance on a discogram (*id.* 569, 304) "demonstrating abnormal discs at L3-4, L4-5, L5-S1, all reproducing severe concordant back pain. . . ." (*Id.* 300.) Further, an MRI demonstrated "diffuse disc

disease and disc bulging at L3-4, L4-5, L5-S1." (*Id.*) The ALJ may not "pick and choose among medical reports, using portions of evidence favorable to h[er] position while ignoring other evidence". *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008).

The ALJ's finding that Dr. Schwender's opinion was "sharply inconsistent with the longitudinal treatment records" (giving Drs. Bergland and Lazer's notes as examples) is also problematic in light of my remand order which noted other doctors' "objective findings based on clinical and diagnostic techniques" that support Dr. Schwender's opinion. (*Id.* 685.) I found in the remand order that the opinions of Drs. Bissell, Sharon and Lippert support Dr. Schwender's diagnoses. (AR 685.) The ALJ completely ignored this finding. The treating physician rule requires consistency with other substantial evidence, not consistency with all other evidence. *Goatcher v. U.S. Dep't of Health and Human Services*, 52 F.3d 288, 290 (10tyh Cir. 1995).

Even the notes of Drs. Lazar and Bergland that the ALJ relied on were selectively applied by the ALJ, and provide some support for Dr. Schwender's opinions. For example, the ALJ found that "Dr. Bergland, like other evaluating providers, noted that claimant moved spontaneously, did not display pain behavior, had excellent strength and range of motion." (AR 610.) The ALJ noted "the consistency of report with the record as a whole" in that regard, and stated she gave the report "significant weight." (*Id.*) The ALJ ignored the fact, however, that Dr. Bergland's clinical impressions of "Degenerative disk disease L3-4, L4-5, L501, "HNP L4-5, L5-S1, "Annular tear L3-4, L4-5, L5-S1" and "Sacroiliitis, bilateral" substantiated Dr. Schwender's findings related to Plaintiff's back problems. (*Id.* 532.) Further, she ignored Dr. Bergland's findings of

tenderness over the SI joints and restricted range of motion, assessment of a 26% whole-person impairment compared to Dr. Schwender's 25%, and his notation that Plaintiff underwent extensive physical therapy management and other treatments and her failure to respond to these modalities. (*Id.* 531-32.) Finally, she ignored the fact that Dr. Bergland deferred to Dr. Schwender's "continued maintenance care for pain management"; thus, he obviously believed that Plaintiff was experiencing pain. (*Id.* 533.)

      As to Dr. Lazar, while he found only mild concordant pain and significant gains in range of motion, he also found, among other things, that Plaintiff "had obviously mechanical low back symptoms, with mechanical back pain reproduced with forward flexion and extension, as well as with bilateral straight leg raising", tenderness at the lower lumbar spine at L4-5 and L5-S1, and pain on examination of the lumbar range of motion. (*Id.* 301-04.) Further, he noted, as Dr. Bergland did, that Plaintiff "has tried multiple modalities of care in the past . . . , all of which have failed to provide any significant long-lasting relief of her symptoms." (*Id.* 304.) The ALJ erred in ignoring these findings.

      Also as to Dr. Schwender's opinion, the ALJ rejected his functional limitation assessment on the basis that it was "of questionable validity by the notations of the occupational therapist performing the testing." (AR 610.) Again, the ALJ ignored my remand order which stated that if the validity of the restrictions in the functional capacity evaluation ["FCE"] was at issue, the ALJ was required to contact Dr. Schwender for clarification. (*Id.* 687.) Finally, at step two of the treating physician rule, the ALJ again failed to acknowledge that even if not entitled to controlling weight, the opinions of

-8-

treating physician Dr. Schwender were entitled to deference and were required to be weighed using all of the relevant factors.  (*Id.* 683.)

I also found in the remand order that the ALJ erred by ignoring medical evidence and opinions by Drs. Lazar, Bissell, McMullen, Lippert, and Sharon, and "the reasons, if any, that she rejected them."  (AR 684.)  Further, I stated that the ALJ needed to evaluate whether Dr. Bissell was a treating physician.  (*Id.*)  The ALJ did not determine whether Dr. Bissell was a treating physician.  Further, she discussed findings of only some of these doctors, and again her review was very selective, only noting findings that supported her decision.  She did not discuss any of their diagnoses or findings that supported Plaintiff's complaints.  For example, Dr. Bissell diagnosed multilevel lumbar intervertebral disc disease (IDD) and left low back pain, cervicothoracic spine pain, as well as lower right knee pain and wrote: "I am really at a loss of any further treatment for her."  (*Id.* 225.)

In short, the ALJ ignored much of the evidence that supported Plaintiff's symptoms related to her impairments.  This was error, as the ALJ must "discuss 'the significantly probative evidence [s]he rejects. . .'".  *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quotation omitted).  I find this particularly troubling as I specifically noted in my remand order that the ALJ could not ignore the substantial evidence in the record "that did indicate objective findings, including not only the MRI of Plaintiff's lumbar spine and diskography, but also the examination of Plaintiff in the record by other physicians."  (AR 688.)  Further, the remand order noted much of the evidence that supported Plaintiff's complaints.

While the ALJ did discuss the MRI in her current decision, she essentially characterized it as normal and used it to discount Plaintiff's credibility.  (*Id.* 607-08.) Dr. Lazar, however, characterized the MRI as demonstrating "diffuse disc disease and disc bulging at L3-4, L4-5, L5-S1", as discussed previously.  (AR 300.)  The ALJ may not make speculative inferences from medical reports and may reject a physician's opinion "'only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion.*'"  *Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) (emphasis in original) (quotation omitted).  The ALJ also stated that the discogram showed only "mild concordant pain at the L3-5 levels."  (*Id.* 608, 304.)  While there was support for that record, Dr. Lazar stated in a separate opinion that the discogram demonstrated "abnormal discs at L3-4, L4-5, L5-S1, all reproducing *severe* concordant pain. . . ." (*Id.* 300.)  The ALJ ignored this finding.

Based on the foregoing, I find that this case must again be remanded because the ALJ failed to properly evaluate the medical evidence and opinions, including the opinion of treating physician Dr. Schwender.

        2.      <u>The RFC Assessment</u>

In my remand order, I found that the ALJ's previous RFC assessment was not supported by substantial evidence.   (AR 689.)  In so finding, I specifically noted that an RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence."  (*Id.*)  It also "must include a narrative discussion describing how the evidence supports each conclusion, citing specific

medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations." SSR 96-8p, 1996 WL 374184, at *7.

I find that the ALJ also erred in the current RFC assessment, as I am unable to determine what evidence the ALJ relied on to support some of her conclusions. The ALJ rejected the functional limitations in the FCE relied on by Dr. Schwender. While she gave great weight to the opinion of Dr. Bergland, he did not assess specific vocational limitations, as noted by the ALJ. (AR 610.)

As to Dr. Mustafa, the ALJ gave only "partial weight" to his opinions, and stated that she "impose[d] restrictions in excess of those suggested by Dr. Mustafa due to the longitudinal record, which the undersigned gives greatest weight." (AR 610.) She does not state, however, what it is in the "longitudinal record" that gave rise to the specific RFC she assessed, including her finding that Plaintiff can perform light work. Moreover, to the extent the ALJ gave weight to Dr. Mustafa's opinion, she erred yet again in not including his restriction that Plaintiff should be given frequent rests or breaks so that she can "stretch and change position to minimize subjective pain", and in not explaining why this limitation was omitted. (*Id.* 552.)[1] Without such an explanation, I cannot find that substantial evidence in the record exists to support the ALJ's determination. *See Confere v. Astrue*, No. 06-4217, 2007 WL 1196520, at *3 (10th Cir. April 24, 2007) (unpublished) (remanding where the ALJ's RFC reflected some of the limitations identified by the state agency physicians, as the ALJ should have explained why he rejected some of the limitations) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th

---

[1] Contrary to the Commissioner's argument, an ability to sit/stand at will does not adequately take this limitation into effect.

Cir. 2007)). This error is particularly egregious as the ALJ made the same error in her previous decision, and was specifically advised of that in the remand order. (*Id.* 690).

The ALJ also completely ignored the remand order regarding error in her pain analysis. I found in that order that "the reason given by the ALJ to completely discount Plaintiff's complaints of pain are not legitimate", and that the ALJ erred to conduct the pain analysis under *Luna v. Bowen*, 834 F.2d 161, 165 (10th Cir.1987) in assessing Plaintiff's RFC. (AR 690.) I further noted that while "a lack of objective findings do not allow an ALJ to simply reject complaints of pain", the record in this case "is replete with findings documenting Plaintiff's pain", examples of which I noted in my order. (*Id.* at 690-91.) I stated in the remand order:

> It is hard to believe from the foregoing evidence that the ALJ so cavalierly dismissed Plaintiff's complaints of pain in assessing Plaintiff's RFC. Every doctor that saw Plaintiff agreed that she had pain, and the many treatments Plaintiff tried to treat the pain were unsuccessful. . . .

(*Id.* at 691.)

The ALJ made the same mistakes in the current case, and again cavalierly dismissed Plaintiff's complaints of pain. Thus, she failed to conduct the *Luna* analysis, even though Plaintiff clearly demonstrated a pain-producing impairment by objective medical evidence, *i.e.,* the degenerative disc disease that the ALJ found to be severe. (AR 605.) The ALJ also completely ignored the doctors' findings of pain and ignored and/or mischaracterized the objective evidence that supported these findings, as discussed previously. (*Id.* 607-08.) Further, she improperly impugned Plaintiff's credibility because her pain levels sometimes varies and, with the exception of daily activities, failed to discuss the other factors relevant to a pain analysis, including all of

the treatments Plaintiff tried for her pain.  See SSR 96-7p, 1996 WL 374186, at *3; 20 C.F.R. § 404.1529(c)(3).

Based on the foregoing, I find that the RFC assessment is once again deficient, requiring a remand.  On remand, the ALJ must consider the limiting effects of all Plaintiff's impairments, even those found not to be severe.  Dray v. Astrue, 353 F. App'x 147, 149 (10th Cir. 2009) (unpublished) (citing 20 C.F.R. §§ 4404.1545(e), 416.945(e)).  This includes, for example, evidence in the record of fatigue and insomnia, the need to lie down during the day, and the fact that Plaintiff had good days and bad days.  I also find that the deficient RFC assessment impacted the hypothetical question to the vocational expert, and the step five determination.  These must also be reassessed on remand.

### 3.   The Credibility Determination

The improper pain analysis impacted both the RFC and credibility findings.  I also find that the ALJ erred as to credibility by improperly relying on the lack of objective evidence to support her credibility findings  (AR 607), when there was objective evidence that the ALJ ignored which supported Plaintiff's complaints as discussed previously.  The ALJ erred by selectively applying this evidence.  See Arrington v. Apfel, No. 98-7099, 1999 WL 446013, at *8-9 (10th Cir. July 1, 1999) (unpublished) ("the ALJ was selectively choosing from the record those statements he wished to rely on without properly considering all the evidence. . . . [w]e have repeatedly held that an ALJ may not engage in a selective evidentiary review").  Moreover, credibility judgments "by themselves 'do not carry the day and override the medical opinion of a treating physician [or other medical evidence] that is supported by the record.'"  McGoffin v.

-13-

*Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002) (quotation omitted). Thus, this credibility finding is also not supported by substantial evidence.

As to Plaintiff's daily activities, I found in my remand order that the ALJ improperly relied on such activities in her previous credibility assessment . (AR 693-94.) I find that the ALJ erred yet again in relying on daily activities in her current decision to discount Plaintiff's complaints of pain and her credibility, despite her acknowledgement that Plaintiff's children helped her with the household chores. (*Id.* 607.) Thus, the ALJ ignored Plaintiff's testimony that she usually only spent one to two hours a day doing household chores, and that her ability to do the chores depended on how she felt. (*Id.* 194-96.) She also ignored Plaintiff's testimony that she was subject to equal amounts of good days and bad days—good days when she would only have to lie down two or three times for 20 to 30 minutes at a time and bad days when she lies down a majority of the day. (*Id.* 72-74, 694.) The ALJ's reliance on daily activities ignores this significantly probative evidence and thus does not provide substantial support for the ALJ's decision. *See Borgsmiller v. Astrue*, 499 F. App'x 812, 818 (10th Cir. 2012) (ALJ's credibility determination was not supported by substantial evidence when ALJ rejected Plaintiff's complaints of pain based on her alleged ability to peform daily activities when the evidence showed that Plaintiff could do household chores "sometimes" and do chores, dishes and prepare meals on "good days").

The ALJ also relied on part time work to discredit Plaintiff's credibility. (AR 605, 607.) However, the evidence on this issue is that Goodwill Industries paid her to watch her 20 year-old Down syndrome son one day of the week in her own home. (*Id.* 643.) Plaintiff testified that she was able to sit down and lie down during the Wednesdays

that she took care of her son. (*Id.* 645.) The ALJ's decision failed to take note of this critical testimony. (*Id.* 607.) *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) ("'failure to make credibility findings . . .regarding critical testimony fatally undermines the (Commissioner)'s argument that there is substantial evidence adequate to support (her) conclusion that claimant is not under a disability'") (quotation omitted).

Finally, the ALJ stated that credibility is the province of the undersigned (AR 607), and noted that she was sort of "discounting" the errors in credibility from this Court "because that's really not their arena." (*Id.* 632.) "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quotations omitted). Further, while "'merely technical omissions'" in the ALJ's reasoning as to credibility "'do not dictate reversal'", I find that "the ALJ's omissions here go beyond the merely technical and call into question the ALJ's application of the appropriate legal standards." *Jones v. Colvin*, 514 F. App'x 813, 823-24 (quoting *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012)). As in *Jones*:

> The ALJ failed to expressly consider the uncontroverted evidence that [the plaintiff] routinely consulted physicians, tried all kinds of pain-relieving treatments, and consistently took narcotic pain-relievers and prescription muscle-relaxers in an attempt to alleviate her pain. The ALJ also failed to expressly consider [the plaintiff's] testimony about her very limited activities of daily living in assessing her credibility. And balanced against these omissions is the fact that many of the grounds upon which the ALJ did rely in discounting [plaintiff's] credibility are not well-supported by the record. Accordingly, we must reverse and remand for the ALJ to make a new credibility determination that follows the correct legal standards and takes into account the entire record.

*Id.* at 824.

Based on the foregoing, I also find that the ALJ erred in the credibility assessment, and that this must be reassessed on remand.

III. CONCLUSION

In conclusion, I find that the ALJ erred in her weighing of the treating physician's opinion and in selectively applying and/or mischaracterizing the medical evidence. I also find that the ALJ erred in the RFC and pain assessment, which impacts later steps of the evaluation, and that these must be reassessed on remand. Finally, the ALJ's credibility determination was not supported by substantial evidence, and must be reassessed on remand.

**I note that this case was previously remanded to the Commissioner, and the case was assigned to the same ALJ who rendered the first decision that I found contained reversible error. This ALJ committed many of the same errors, and in so doing completely ignored or disregarded most of my remand order. In light of this, I find that this ALJ has demonstrated that she will not comply with my orders, and that a new ALJ must be appointed to address this case. The Commissioner, through the Appeals Council, shall advise the new ALJ of this Order and direct him or her to comply with its directives.** Finally, the Commissioner is advised that the Social Security Adminstration "is not entitled to adjudicate a case '*ad infinitum* until it correctly applies the proper legal standard and gathers evidence to support its conclusion.'" *Sisco v. U.S. Dept. of Health and Human Services*, 10 F.3d 739, 744 (10th Cir.1993) (quotation omitted).

It is therefore

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner for further fact finding as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g). It is

FURTHER ORDERED that **on remand, the Commissioner shall appoint a new ALJ to hear the case**.

Dated: September 29, 2014

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge